**E-FILED on 2/21/2013**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ISSAC FLORES, | ) | No. C 10-2773 RMW (PR) |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS; |
| vs. | ) | DENYING CERTIFICATE OF |
| | ) | APPEALABILITY |
| ACTING WARDEN GREG LEWIS, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2008 administrative decision to validate him as a prison gang member and order his continued housing in the Secured Housing Unit ("SHU"). Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities. Petitioner has filed a traverse. For the reasons stated below, the court DENIES petitioner's petition for writ of habeas corpus.

**BACKGROUND**

In 1987, petition was convicted of conspiracy and second degree murder, and sentenced to a term of 16 years to life in state prison. In April 1996, petitioner was denied inactive status

and validated as an active gang member of the Northern Structure Prison Gang.  He continued to be housed in the SHU for an indeterminate term.

In October 2008, the prison determined that four source items supported petitioner's revalidation as a member of the Northern Structure Prison Gang.  (Resp. Exs. 2, 4.)  The first source item was a CDC 128B form, which indicated that on October 23, 2008, Correctional Officer Bonffil discovered a drawing of a "Mexican Pistolero" that included symbols of the "North Star," which had been identified as a symbol used by members of the Northern Structure Prison Gang.  (Resp. Ex. 2 at 2.)  The second source item was a CDC 1030 confidential information disclosure form, which indicated that on July 15, 2008, Correctional Officer Harlow drafted a confidential memorandum noting that he searched a validated Northern Structure member's personal property and found a piece of paper containing "Ghost Writing" that included petitioner's identifying information, as well as identifying information of other validated members and associates of the Nuestra Familia and Northern Structure Prison Gangs.  (Id. at 3.) The third source item was a CDC 1030 confidential information disclosure form, which indicated that on August 5, 2008, Correctional Sergeant A. Barneburg drafted a confidential memorandum noting that confidential information was recovered by prison staff on July 25, 2008, identifying petitioner as an active member/associate of the Northern Structure Prison Gang.  (Id. at 4.)  The fourth source item was a CDC 1030 confidential information disclosure form, which indicated that on August 9, 2007, Correctional Sergeant J. Bales drafted a confidential debriefing report indicating that he received information from a confidential informant identifying petitioner as an active member/associate of the Northern Structure Prison Gang, and was in good standing.  (Id.  at 5.)

Petitioner challenges the October 2008 decision to deny him inactive status and retain him in the SHU.

## DISCUSSION

A.    Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in

1  custody pursuant to the judgment of a state court only on the ground that he is in custody in

2  violation of the Constitution or laws or treaties of the United States."  28 U.S .C. § 2254(a).

3  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

4  may not grant a petition challenging a state conviction or sentence on the basis of a claim that

5  was reviewed on the merits in state court unless the state court's adjudication of the claim "(1)

6  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

7  established federal law, as determined by the Supreme Court of the United States; or (2) resulted

8  in a decision that was based on an unreasonable determination of the facts in light of the

9  evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

10  both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S.

11  362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

12  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

13      "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

15  law or if the state court decides a case differently than [the] Court has on a set of materially

16  indistinguishable facts."  Williams, 529 U.S. at 412-13.  A state court decision is an

17  "unreasonable application of" Supreme Court authority, falling under the second clause of

18  § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

19  Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

20  case."  Id. at 413.  The federal court on habeas review may not issue the writ "simply because

21  that court concludes in its independent judgment that the relevant state-court decision applied

22  clearly established federal law erroneously or incorrectly."  Id. at 411.

23      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

24  will not be overturned on factual grounds unless objectively unreasonable in light of the

25  evidence presented in the state-court proceeding."  Miller–El, 537 U.S. at 340.  The court must

26  presume correct any determination of a factual issue made by a state court unless the petitioner

27  rebuts the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. §

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.Rmw\HC.10\Flores773denhc.wpd

1    2254(e)(1).

2    B.    Petitioner's claims

3       Petitioner claims that the decision to revalidate him as an active gang member violated

4 his First Amendment right to association, right to equal protection, and right to due process.

5 Respondent argues that (1) the court lacks subject matter jurisdiction to hear petitioner's claims

6 because he does not challenge the legality or duration of his confinement, (2) petitioner fails to

7 state a First Amendment or equal protection claim, (3) petitioner does not have a federal liberty

8 interest in being free from the SHU, and (4) petitioner has received all the process he is due.

9       1.     First Amendment

10       Plaintiff alleges that his First Amendment right of association was violated by his

11 validation as a gang member and placement in the SHU. Plaintiff claims that as a result of these

12 decisions, he is prohibited from associating with other inmates from Northern California. (Pet.

13 at 13.)

14       A federal court may only grant a petition for writ of habeas corpus if the petitioner can

15 show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas

16 corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his

17 confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), quoting Preiser v. Rodriguez,

18 411 U.S. 475, 485 (1973). Here, petitioner's First Amendment claim does not affect the fact or

19 duration of his custody, and thus, it is dismissed for failure to state a claim.

20       Even assuming that petitioner's First Amendment claim is cognizable in habeas, the

21 claim is without merit. Prison regulations that infringe a prisoner's constitutional right are valid

22 so long as they are "reasonably related to legitimate penological interests." Turner v. Safley, 482

23 U.S. 78, 89 (1987); see also Pell v. Procunier, 417 U.S. 817, 822-23 (1974) (identifying four

24 central penological objectives: deterrence (by making incarceration undesirable), protection (by

25 quarantining criminal offenders), rehabilitation, and ensuring internal security of the prison

26 facility). Courts owe "substantial deference to the professional judgment of prison

27 administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Turner held that restrictive

28

1  prison regulations are permissible if they are "reasonably related" to legitimate penological

2  interests, and are not an "exaggerated response" to such objectives.  <u>Turner</u>, 482 U.S. at 87.

3    The Supreme Court has identified four factors to consider when determining the

4  reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the

5  prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether

6  there are alternative means of exercising the right that remain open to prison inmates"; (3) "the

7  impact accommodation of the asserted constitutional right will have on guards and other inmates

8  and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives",

9  or, in other words, whether the rule at issue is an "exaggerated response to prison concerns."

10  <u>Turner</u>, 482 U.S. at 89-90.

11    It is well established that the First Amendment right to freedom of association is among

12  the rights least compatible with incarceration, <u>see</u> <u>Overton</u>, 539 U.S. at 131, and such right "may

13  be curtailed whenever the institution's officials, in the exercise of their informed discretion,

14  reasonably conclude that such associations . . . possess the likelihood of disruption to prison

15  order or stability."  <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 132 (1977).

16  Based on the documents attached to the petition, it is clear that petitioner's validation was based

17  on evidence showing that petitioner was involved with gang activity.  It cannot be disputed that

18  the prison has a legitimate interest in preserving the safety of its inmates and staff, which

19  includes preventing gang violence.  <u>See also</u> <u>Bruce</u>, 351 F.3d at 1289 ("It is clear . . . that prisons

20  have a legitimate penological interest in stopping prison gang activity.").  Accordingly,

21  petitioner's First Amendment claim is dismissed.

22    2. <u>Equal Protection</u>

23    Petitioner's equal protection claim is similarly dismissed for failure to state a cognizable

24  claim for habeas relief.  <u>See</u> <u>Badea</u>, 931 F.2d at 574.  There is no indication that his claim would

25  affect the fact or duration of his confinement.  Moreover, petitioner does not state any facts

26  sufficient to support an equal protection claim.  "The Equal Protection Clause of the Fourteenth

27  Amendment commands that no State shall 'deny to any person within its jurisdiction the equal

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.Rmw\HC.10\Flores773denhc.wpd

1  protection of the laws,' which is essentially a direction that all persons similarly situated should

2  be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440-41 (1985),

3  quoting Plyler v. Doe, 457 U.S. 202, 216 (1982).  Petitioner does not suggest that other persons

4  similarly situated with him are being treated differently.  Accordingly, petitioner's equal

5  protection claim is dismissed.

6           3.      Due Process[1]

7           Plaintiff claims that defendants violated his right to due process because his placement in

8  the SHU was based on insufficient evidence.[2]

9           Changes in conditions of confinement may amount to a deprivation of a state-created and

10  constitutionally-protected liberty interest, provided the liberty interest in question is one of "real

11  substance," see Sandin v. Conner, 515 U.S. 472, 477, 484-87 (1995), and, in particular, where

12  the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary

13  incidents of prison life," see id. at 484.  In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the

14  Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless

15  there is "some evidence" in the record to support the findings of the prison disciplinary board.

16  The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in

17  segregation for administrative reasons.  See Toussaint v. McCarthy, 801 F.2d 1080, 1104 (9th

18  Cir. 1986).  This standard applies to placement in a SHU for gang affiliation.  Bruce v. Ylst, 351

19  F.3d 1283, 1287-88 (9th Cir. 2003), and is met if there was some evidence from which the

20  conclusion of the administrative tribunal could be deduced.  See Toussaint, 801 F.2d at 1105

21  (citing Hill, 472 U.S. at 455).  Ascertaining whether the standard is satisfied does not require

22  examination of the entire record, independent assessment of the credibility of witnesses or

23

24  _____

25      [1]  Because the court has previously denied respondent's argument that it the petition lacks
    habeas jurisdiction and fails to state a claim, it will not rehash that discussion again.  (Docket
26  No. 23.)

27      [2]   Petitioner does not assert, and the record does not support, that he was not provided
    notice or an opportunity to be heard.  Hewitt v. Helms, 459 U.S. 460, 476 (1983).
28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.Rmw\HC.10\Flores773denhc.wpd

1  weighing of the evidence.  See id.  Instead, the relevant question is whether there is any evidence

2  in the record that could support the conclusion reached.  See id.

3      The Ninth Circuit also requires that the evidence relied upon by prison disciplinary

4  boards contain "some indicia of reliability," Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987),

5  but has not directly considered whether a corresponding need for evidentiary reliability exists

6  when prison officials segregate an inmate for administrative reasons.[3]  Some district courts have

7  extended the reliability requirement to the administrative context, however, holding that "the

8  evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some

9  indicia of reliability' to satisfy due process requirements."  Madrid v. Gomez, 889 F. Supp.

10  1146, 1273-74 (N.D. Cal. 1995); see Jones v. Gomez, No. C 91-3875 MHP, 1993 WL 341282,

11  *3-4 (N.D. Cal. Aug. 23, 1993) (order denying summary judgment) (due process requires indicia

12  of reliability due to high risk of false information by informants, inherent prisoner conflicts and

13  necessity for independent factfinding by prison officials).

14      Here, the first source item was the CDC 128B stating that petitioner possessed a drawing,

15  within which was found symbols of the "North Star."  (Resp. Ex. 2 at 2.)  The 128B stated that,

16  "[b]ased on gang training and experience," the "North Star" symbol is indicative of membership

17  within the Northern Structure Prison gang.  (Id.)  "The North Star Concept is used to indoctrinate

18  Northern street gang members with the N[orthern] S[tar] prison gang's ideologies."  (Id.)

19  Petitioner claims that the identified "symbol" is not indicative of gang activities because the

20  "North Star" is only one star and not four.  (Pet. at 15.)  The question for the court, however, is

22  [3]  If the information relied upon by the disciplinary committee are the statements of an
unidentified informant, due process requires that the record contain: (1) some factual information
from which the committee can reasonably conclude that the information was reliable and (2) a
prison official's affirmative statement that safety considerations prevent the disclosure of the
informant's name.  See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Reliability may
be established by: (1) the oath of the investigating officer appearing before the committee as to
the truth of his report that contains confidential information, (2) corroborating testimony, (3) a
statement on the record by the chairman of the committee that he had firsthand knowledge of
sources of information and considered them reliable based on the informant's past record, or (4)
in camera review of the documentation from which credibility was assessed.  See id. at 186-87.

1  whether it was unreasonable for the state court to have viewed the symbol within the drawing as

2  depicting the "North Star." The court cannot so conclude because the CDCR has expertise in

3  identifying what symbols and indicia gangs are using. Plaintiff's arguments to the contrary

4  challenge the persuasiveness of this evidence, but the weighing and credibility of the evidence

5  are not part of the analysis of whether the relatively low "some evidence" standard was met.

6  Thus, the symbols within the drawing constitute some evidence to support the gang validation

7  decision. See Bruce, 351 F.3d at 1288 (recognizing that even one single piece of evidence is

8  sufficient to support validation under the lenient due process standard).

9       The second source item, the confidential memorandum referencing the discovery of a

10  "Ghost Writing" paper in the possession of another validated Northern Structure member, does

11  not originate from an unidentified informant. The memorandum explained that "Ghost Writing"

12  was a method of writing without ink, used by Northern Structure Prison Gang members, so that

13  it can be undetected by gang investigators and correctional staff. (Resp. Ex. 2 at 3.) Inspection

14  of this "Ghost Writing" showed a roster containing the names, aliases, birthdates, and CDCR

15  identification numbers belonging to several validated members, including petitioner's, of the

16  Nuestra Familia and Northern Structure Prison Gangs. (Id.) As the Confidential Information

17  Form states, the information is considered reliable because it was gathered from staff

18  investigation or non-confidential sources, and also the notes were never intended to be seen by

19  CDCR staff or gang investigation staff. (Id.) Again, although petitioner argues against the

20  weight of the evidence, that is not the question before this court. This court does not decide

21  anew whether to validate him, but only whether there was some evidence with sufficient indicia

22  of reliability to support the decision reached by the defendant.

23       The third source item was another confidential memorandum, dated August 5, 2008,

24  which stated that confidential information was recovered by staff on July 25, 2008 during a

25  contraband watch, which identified petitioner as an active member or associate of the Northern

26  Structure Prison gang. (Resp. Ex. 2 at 4.) The information was considered reliable because it

27  had been confiscated and not solicited by, or intended for, staff. Further, part of the information

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
G:\PRO-SE\SJ.Rmw\HC.10\Flores773denhc.wpd

1    provided by the source had already been proven true.

2          The fourth source item originated from a confidential informant ("CI").  The CI

3    identified petitioner as being an active member of the Northern Structure Prison Gang.  (Resp.

4    Ex. 2 at 5.)  Prison officials assessed that the information was reliable because it was

5    corroborated by another source, and the CI incriminated himself in a criminal activity at the time

6    he provided the information.  (Id.)  The fourth source item was corroborated by both the second

7    and third source items.  Because the record contains some factual information from which the

8    state court could have reasonably concluded that the statements were reliable, the fourth source

9    item met the "some evidence" standard.  See Freitas v. Auger, 837 F.2d 806, 811 (8th Cir.1988)

10   (upholding reliability determination where statements of two informants contained some factual

11   background, were consistent with each other, and at least one of them was against the

12   informant's penal interest); Pratt v. Rowland, 770 F.Supp. 1399, 1403-04 (N.D. Cal. 1991)

13   (finding adequate indicia of reliability where confidential statement was lent some credibility by

14   confidential memoranda, was consistent with Rules Violation Report, and informant

15   incriminated himself in criminal activity at the time of providing the information); see also Cal.

16   Code of Regs. tit. 15, § 3321(c)(3) (confidential source may be deemed reliable if the provided

17   information is self-incriminating).

18         Although any one piece of evidence is sufficient to establish "some evidence," that

19   petitioner continues to be involved in gang activity, see Bruce, 351 F.3d at 1288, a review of the

20   source items shows that each one supports the administrative decision.[4]  For the above reasons,

21

22         [4] Petitioner states that the four source items may be sufficient to identify as a gang
     member, see Cal. Code Regs. tit. 15, § 3378(c)(3) (listing criteria to determine whether an
23   inmate is a member of a gang), which is used for initial validation.  (Pet. at 18.)  To the extent
     petitioner contends, however, that these same source items do not demonstrate that he was
24   involved in gang activity, see Cal. Code Regs. tit. 15, § 3378(e) (stating that a gang member may
     be considered for inactive status when he "has not been identified as having been involved in
25   gang activity for a minimum of six years"), Petitioner's claim appears to turn on the state's
     definition of "involved in gang activity."  This is a matter of state law.  The state's interpretation
26   and application of its own regulations does not state a federal claim for habeas relief.
     Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009).
27

28
     Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
     G:\PRO-SE\SJ.Rmw\HC.10\Flores773denhc.wpd

this court has no basis for finding that the California courts' rejection of petitioner's claims were either was contrary to or involved an unreasonable application of clearly established Supreme Court law.

**CONCLUSION**

For the reasons set forth above, the petition for writ of habeas corpus is DENIED.  The clerk shall terminate all pending motions and close the file.

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

IT IS SO ORDERED.

DATED: _____

RONALD M. WHYTE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ISAAC FLORES,

                Plaintiff,

    v.

FRANCISCO JACQUEZ et al,

                Defendant.

_____/

Case Number: CV10-02773 RMW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 21, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Isaac Flores D 50574
Pelican Bay State Prison (SHU)
Housing: D-7-112
P.O. Box 7500
Cresent City, CA 95532-7500

Dated: February 21, 2013

                      Richard W. Wieking, Clerk
                      By: Jackie Lynn Garcia, Deputy Clerk